<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**WILLIAM EBERHART,**

       *Plaintiff,*

       **v.**

**LG ELECTRONICS USA, INC.**

       ***Defendant.***

**Civil Action No. 15-1761**

**OPINION**

ARLEO, UNITED STATES DISTRICT JUDGE,

    This matter comes before the Court by way of Defendant LG Electronics USA, Inc.'s motion to dismiss. Dkt No. 13. For the reasons stated below, the motion is **granted**.

### I.    BACKGROUND

    This matter is a class action against a major television manufacturer for deceptively marketing its televisions' frame rates. Defendant LG Electronics USA, Inc. ("LG") is a New Jersey corporation with its headquarters and principal place of business located in New Jersey. Compl. ¶ 22, Dkt. No. 1.

    Television consumers perceive motion on a television screen by observing a display of still images flashed in rapid succession. <u>Id.</u> ¶ 2. The number of unique still images displayed on the television screen each second is referred to as the refresh rate. <u>Id.</u> Thus, a television with a 60 hertz (or "Hz") refresh rate can display 60 unique images on its screen each second. <u>Id.</u> Because electricity in the United States runs at 60 Hz, televisions here can generally only display 60 unique images per second. <u>Id.</u> ¶¶ 2, 5, 25. Consumers understand refresh rate to refer to unique images per second. <u>Id.</u> ¶ 40.

Displaying too few cycles per second can result in blurring known as "motion blur." Id. ¶ 26. One critical marketed characteristic for televisions is their ability to crisply display rapid motion. Id. ¶ 7. A television's ability to crisply display rapid motion is a primary input in the price of the television overall. Id. In other words, consumers are willing to pay more for a television with a higher refresh rate, and a high refresh rate is a mark of a television's quality. Id. ¶ 13.

LG allegedly invented two rating systems for its liquid crystal display ("LCD") televisions: Motion Clarity Index ("MCI") and "TruMotion." Id. ¶¶ 6, 8. These ratings were designed to confuse consumers and convince them that LG televisions had higher refresh rates than they did. Id. TruMotion technology had ratings at 120, 240, and 480. Id. ¶ 3. MCI used a similar number scale. Id. ¶¶ 4, 37. These rating systems purported to measure the clarity of a television's picture, and intentionally used increments iconically associated with hertz—120, 240, 480—to fool consumers into believing their televisions had a higher refresh rate than they actually did. Id. ¶¶ 39, 43. LG intentionally did not disclose the actual refresh rates on their televisions. Id. ¶ 6.

In addition to the deceptive numbers, LG also made claims that its rating systems measured higher frame rates. On their website, LG claimed that TruMotion "increases the standard 60Hz refresh rate—how often the image is rendered on the TV screen—which drastically reduces blur and yields crisper details . . . . LG TruMotion 120Hz, 240 Hz or 480 Hz is available on select-model LCD TVs." Id. ¶ 3. Also on its website, LG claimed that the MCI "represents not only the benefits of our enhanced frame rates but also our detailed backlight scanning, advanced local dimming, and  powerful video processing engine. A higher MCI is better, and this television has earned an impressive rating of 480." Id. ¶ 4. The televisions have a true refresh rate of half or less than consumers reasonably expected based on Defendant's alleged misrepresentations. Id. ¶ 11.

As a result of these misrepresentations, consumers are paying more than they otherwise would for a lower quality product.  Id. ¶ 13.

Plaintiff, William Eberhart, bought a 60 inch LG 60LB5200 television at a local Walmart near his home in Toms River, New Jersey.  Id. ¶¶ 17-18.  He reviewed advertisements and technical specifications created and disseminated by Defendant which represented that his television had a MCI of 480.  Id. ¶ 19.  His television has a refresh rate of 60 hertz.  Id. ¶ 20.  He received a Limited Warranty from LG, which provides for repair or exchange of defective televisions within a certain time period.  Kearney Cert. Ex. 1, Dkt. No. 13-3.  Plaintiff now seeks to represent a class of purchasers of LG LCD televisions from March 1, 2011 until the present.

Plaintiffs' Complaint contains the following counts: (1) violation of New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, (2) breach of covenant of good faith and fair dealing, (3) common law fraud, (4) negligent misrepresentation, (5) breach of express warranty, and (6) unjust enrichment.  Compl.  Defendant has moved to dismiss each count.

## II.    LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  Id.  The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.  Accordingly, a complaint will survive a motion to dismiss if it provides

a sufficient factual basis such that it states a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard: namely, "a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  The circumstances of the fraud must be stated with sufficient particularity to put a defendant on notice of the "precise misconduct with which [it is] charged."  Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

## III.   ANALYSIS

### A.  Article III Standing

Defendant first argues that Plaintiff lacks standing to bring this case on two bases: (1) Plaintiff does not allege an injury in fact and (2) Plaintiff does not have standing to bring class claims for products he did not purchase.  The Court will not dismiss this matter on either of these bases.

#### 1.  Injury in Fact

To have standing under Article III, Plaintiff must allege an injury in fact caused by disputed activity that is redressable.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  Any injury must be actual or imminent and concrete and particularized, not conjectural or hypothetical.  Id.  Plaintiff alleges a concrete injury.  The television he purchased is allegedly of lower quality, specifically with regard to framerate, than he was led to believe.  Compl. ¶¶ 31, 46, 62, 95, 96.  He also paid

4

more for the television due to the implied higher refresh rate.  Id. ¶¶ 21, 62, 95.  Both of these are cognizable, concrete injuries sufficient to support Article III standing.

### 2.   Standing to Sue for Products Plaintiff Did Not Purchase

Defendant's second argument is more nuanced.  Defendant argues that Plaintiff lacks standing to assert claims on behalf of the class who purchased LCD televisions prior to 2014 because they were sold using a different rating index: "TruMotion."  Compl. ¶ 3.  Plaintiff suffered no injury from those misrepresentations, the argument goes, so he cannot challenge them.

Many courts in this district permit a class complaint to survive until class certification even on products a lead plaintiff did not purchase, so long as three criteria are met: (1) "the basis for each of the claims must be the same with respect to the products class plaintiffs purchased and the products the class plaintiffs did not purchase"; (2) "the products must be closely related"; and (3) the defendants "must be the same."  In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig., No. 12-03571, 2013 WL 6450701, at *4 (D.N.J. Dec. 9, 2013) (citing Burke v. Weight Watchers Intern., Inc., No. 12-6742, 2013 WL 5701489, at *3-4 (D.N.J. Oct. 17, 2013), and Stewart v. Smart Balance, Inc., No. 11-6174, 2012 WL 4168584, at *16 (D.N.J. June 26, 2012)) (brackets and internal quotation marks omitted).

The L'Oreal case dealt with makeup and skincare products which were marketed using allegedly deceptive practices including use of Photoshop, deceptive disclaimed, biased studies, and others.  The L'Oreal court allowed plaintiffs' class claims to survive as to a variety of products they did not purchase, because they were marketed using many of the same misrepresentations or deceptive practices.  Defendant argues that L'Oreal is distinguishable because LG televisions are marketed with different representations for different products.  But the same was true in L'Oreal, where marketing for different skincare products made different claims of efficacy.  See In re

L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig., 2013 WL 6450701, at *2-4.  The mere existence of product-specific language does not prevent the plaintiff from proceeding through class discovery where there is a controlling common basis for the class complaint across the different products.

Such a common basis is present here.  For both the TruMotion and the MCI scales, LG designed ratings systems to measure motion clarity using the numerical iterations tied to hertz in order to deceive consumers into believing that their televisions had a higher refresh rate than the televisions actually had.  Specifically, the use of a motion clarity scale using iterations 120, 240, and 480 is alleged to have deceived consumers of both TruMotion and MCI scale televisions.  Compl. ¶¶ 3-4, 6.  The products—LCD televisions manufactured by LG—are related.  LG is the Defendant for both sets of claims.  As such, the Court follows the In re L'Oreal, Burke, and Stewart decisions, deferring final adjudication of whether the class plaintiff has standing to bring the class claims for TruMotion televisions until class certification.

### B.  New Jersey Consumer Fraud Act (Count I)

Defendant also seeks to dismiss the New Jersey Consumer Fraud Act ("CFA") claim.  A CFA claim requires three elements to be shown: "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal connection between the unlawful conduct and the ascertainable loss."  Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 120 (2014); see also Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 389 (2007).

### 1.  Unlawful conduct

Defendant first argues that Plaintiff does not allege any actually false statements, so the CFA claim must be dismissed.  This does not require dismissal.

N.J. Stat. Ann. § 56:8-2 identifies what conduct constitutes an unlawful practice:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

"The capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice." Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 378 (1977). A statement need not be literally false in order to constitute an actionable misrepresentation under the CFA because in "an action under the Consumer Fraud Act, the test is whether an advertisement has the capacity to mislead the average consumer. Even if an advertisement is literally true, it may be actionable if the overall impression [it] create[s] . . . is misleading and deceptive to an ordinary reader." Union Ink Co. v. AT&T Corp., 352 N.J. Super. 617, 644-45 (App. Div. 2002) (citations and quotations omitted); Miller v. Am. Family Publishers, 663 A.2d 643, 648, 651 (N.J. Super. Ch. 1995) (upholding NJCFA claim even though "Defendant [was] correct that a careful, literal reading of the quoted language reveals that the words do not actually say what plaintiffs claim they are intended to convey" because the "that defendant's activities are likely to mislead an average, reasonable consumer.").

Plaintiff has adequately alleged unlawful conduct under the CFA. According to the Complaint, Defendant created rating systems for their television' clarity of motion, intentionally pegged at intervals associated with hertz to mislead consumers into believing LG televisions had

higher refresh rates.  Plaintiff has alleged sufficient facts to show that Defendant's MCI and TruMotion systems could mislead the average reasonable consumer.[1]

### 2. Ascertainable loss

Defendant also argues that Plaintiff has not alleged ascertainable loss.  The Court agrees.

Ascertainable loss requires a plaintiff to establish an actual loss that is "quantifiable or measurable," as opposed to "hypothetical or illusory."  Thiedemann v. Mercedes–Benz, USA, LLC, 183 N.J. 234, 248, 252, 255 (2005).  "In cases involving alleged misrepresentations, as here, 'either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle.'"  Solo v. Bed Bath & Beyond, Inc., No. 06-1908, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (citing Thiedemann v. Mercedes–Benz USA, LLC, 183 N.J. 234, 248 (2005)). "[W]hat New Jersey Courts require for that loss to be 'ascertainable' is for the consumer to quantify the difference in value between the promised product and the actual product received." Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 99 (D.N.J. 2011); see also In re AZEK Bldg. Products, Inc., Mktg. & Sales Practices Litig., 82 F. Supp. 3d 608, 624 (D.N.J. 2015).  "The precise amount of loss need not be known; it need only be measureable."  Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 335-36 (D.N.J. 2014) (finding identifiable price premium and increased energy costs sufficient to satisfy ascertainable loss).

Plaintiff cites a single allegation to quantify his loss: "advertised refresh rates of modern televisions are an important differentiator among competing manufacturers and are, likewise, a key component of television pricing . . . ."  Compl. ¶ 7.  That is not enough.  This allegation does not provide a method to determine the premium paid for a higher refresh rate on his television.

---

[1] As noted infra, Plaintiff also includes allegations of statements which were allegedly actually false.

Nor does he allege prices for comparable televisions without the deceptive advertising or with clearly expressed, accurate refresh rates.  Plaintiff must allege a means of quantifying his loss in order to show ascertainable loss, and he has not done so.

"This is not a Sisyphean pleading burden. '[T]he valuations do not have to be perfect. They need only provide a reasonable basis for valuation that is not speculative or unquantified.'"  In re AZEK Bldg. Products, Inc., Mktg. & Sales Practices Litig., 82 F. Supp. 3d at 624 (quoting Smajlaj, 782 F. Supp. 2d at 102-03).  Plaintiff's CFA claim is therefore dismissed without prejudice to replead.[2]

### C.  Common Law Fraud (Count III)

"To establish common-law fraud, a plaintiff must prove: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'"  Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005) (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)); accord Glass v. BMW of N. Am., LLC, No. 10-5259, 2011 WL 6887721, at *17 (D.N.J. Dec. 29, 2011).  Fraud must be pled with particularity pursuant to Rule 9(b).

### 1.  Material Misrepresentations

Defendant argues that Plaintiff's fraud allegations do not satisfy the particularity requirements for pleading fraud under Rule 9(b).  The Court disagrees.

"The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim."  Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414 n.2

---

[2] Because Plaintiff has not alleged ascertainable loss, the Court will not discuss the causal connection between ascertainable loss and the unlawful conduct.

(3d Cir. 2003).  "[T]he law does not require specificity just for specificity's sake.  The level of particularity required is sufficient details to put Defendants on notice of the "precise misconduct with which they are charged."  Smajlaj, 782 F. Supp. 2d at 104.

Plaintiff has clearly put Defendant on notice as to the basis for its fraud claim: Defendant's use of the MCI and TruMotion rating systems.  Additional specificity as to all the locations where those systems were used would be "specificity just for specificity's sake."  Smajlaj, 782 F. Supp. 2d at 104.

Plaintiff sufficiently identifies specific false statements as well.  Defendant allegedly said the TruMotion system "increases the standard 60Hz refresh rate. . . . LG TruMotion 120Hz, 240Hz, or 480Hz is available on select-model LCD TVs."  Compl. ¶ 3.  Defendant also claimed that its 480 MCI rating represented "our enhanced frame rates," among other things.  Id. ¶¶ 37-38.  Plaintiff's Complaint points to particular web pages, accessed on particular dates, which made these alleged misrepresentations.  Compl. ¶¶ 3-4.  This adequately provides notice of what alleged misrepresentations are at issue.

### 2.  Knowledge of Falsity and Intent to Induce Reliance

Defendant claims that Plaintiff has not adequately alleged that Defendant knew any statement was false or intended to induce others to rely on their false statements.  The Court disagrees.

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  To survive dismissal, the general allegations must be more than conclusory.  Gotthelf v. Toyota Motor Sales, U.S.A., Inc., 525 F. App'x 94, 103 n.15 (3d Cir. 2013).

Plaintiff has alleged intent to deceive and knowledge of falsity here.  See Compl. ¶¶ 6, 61, 67, 79.  Facts support these allegations.  For example, LG failed to include or reference the true refresh rate of their televisions within its marketing material and packaging.  Id. ¶ 6.  LG knew that its rating system mirrored increments for hertz, and set them at those increments by design.  Id.  These allegations, among others, sufficiently allege that Defendant knew that its refresh rates were lower than it was implying them to be.

### 3. Reasonable Reliance

Defendant argues that Plaintiff has not alleged reasonable reliance with sufficient particularity.  The Court agrees.

In Gray v. Bayer Corp., the Court held that "alleging the general exposure to, and reliance upon, some advertisements, is insufficient to survive heightened scrutiny" and dismissed the fraud claim where plaintiff failed to "specify[ ] what advertisements she heard and when or how she was exposed to them."  No. 08-4716, 2009 WL 1617930, at *3 (D.N.J. June 9, 2009).  Plaintiff seeks to distinguish Bayer on the grounds that he has alleged more than the Bayer plaintiff.  The entirety of Plaintiff's allegations concerning reliance are that he "reviewed advertisements and technical specifications created and disseminated by Defendant which, among other things, represented that his Television had a MCI of 480."  Compl. ¶ 19.  This is not meaningfully more specific than the vague statement that the plaintiff "relied on Bayer's representations."  Bayer, 2009 WL 1617930, at *3.[3]  Count III is therefore dismissed without prejudice for failure to adequately allege reliance on specific misrepresentations.

---

[3] There is no indication that the representation that the LG television had an MCI of 480 was actually false.  Thus, this representation alone may not support a common law fraud claim, as such claims consistently require knowledge of falsity.  See Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73.

### 4.  Damages

Damages have been alleged by Plaintiff, as he repeatedly claims he overpaid for an inferior quality television due to LG's deception.  Compl. ¶¶ 13, 21, 81.

### D.  Negligent Misrepresentation (Count IV)

Defendant argues that Plaintiff has failed to allege a claim for negligent misrepresentation because it has not alleged any claim that is actually false.  The Court disagrees, but dismisses the claim based on Plaintiff's insufficient allegations regarding reliance.

A negligent misrepresentation claim in New Jersey requires: (1) a false statement, (2) negligently made, (3) upon which plaintiff justifiably relied, that (4) resulted in economic loss or injury because of plaintiff's reliance. See Mason v. Coca-Cola Co., 774 F. Supp. 2d 699, 704 (D.N.J. 2011).  A negligent misrepresentation claim may arise from an omission, but only if the party who made the purported negligent omission had an independent legal duty mandating disclosure of the specific information allegedly omitted. See Henderson v. Volvo Cars of N. Am., LLC, No. 09-4146, 2010 WL 2925913, at *11 (D.N.J. July 21, 2010).

Plaintiff identifies at least two allegedly false statements.  See supra at III.C.1; Compl. ¶¶ 3, 37-38.  However, this claim fails because Plaintiff has not alleged that he relied upon either of these statements.  Count IV is therefore dismissed without prejudice.

### E.  Express Warranty (Count V)

Defendant moves to dismiss the express warranty claims on two bases: (1) express warranties are disclaimed by LG's written warranty and (2) Plaintiff fails to allege a breach.

"Under New Jersey law, in order to state a claim for breach of express warranty, Plaintiffs must properly allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain

for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." In re AZEK Bldg. Products, Inc., Mktg. & Sales Practices Litig., 82 F. Supp. 3d 608, 614 (D.N.J. 2015) (quoting Snyder v. Farnam Cos., Inc., 792 F. Supp. 2d 712, 721 (D.N.J. 2011)).

The plain language of the Limited Warranty clearly was not breached.  Thus, any express warranty claim must come from a prior statement which became part of the basis of the bargain.  However, Plaintiff's failure to allege reliance also renders his express warranty claim infirm.  Plaintiff alleges no facts to indicate that the Defendant's statements concerning the refresh rate became a part of the basis of the bargain for the LG television Plaintiff purchased.  He does not even allege that he saw these statements. See Compl. ¶¶ 3, 36-37.  On that ground, Count V must be dismissed.[4]

### F.  Breach of Duty of Good Faith and Fair Dealing (Count II)

Defendant seeks to dismiss Count II because Plaintiff has alleged no conduct that deprived him of the rights and benefits under the contract.  The Court agrees.

All contracts in New Jersey contain an implied covenant of good faith and fair dealing that requires the parties to the contract to act in good faith and "refrain from doing anything which will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (2005) (internal quotation marks omitted). Graddy v. Deutsche Bank lays out the requirements for a breach of covenant of good faith and fair dealing claim:

> In order to succeed on a claim for breach of the covenant of good faith and fair dealing, a plaintiff must prove that: (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract [unless excused]; (3) the defendant

---

[4] Any refiled claim for breach of express warranty should state the precise statements which Plaintiff claims became part of the basis of the bargain for the product, why they did so, and any facts potentially invalidating the Limited Warranty as inconsistent or unconscionable.

> engaged in conduct, apart from its contractual obligations, without
> good faith and for the purpose of depriving the plaintiff of the rights
> and benefits under the contract; and (4) the defendant's conduct
> caused the plaintiff to suffer injury, damage, loss or harm.

No. 11-3038, 2013 WL 1222655, at *4 (D.N.J. Mar. 25, 2013).

The only contract alleged between LG and Plaintiff is the Limited Warranty.  Kearney Cert.

Ex. 1.  The Limited Warranty expressly disclaims any other warranties, express or implied.  The

only right Plaintiff is explicitly entitled to, under the Limited Warranty, is a right to repair or

replace a defective product.  Plaintiff does not allege that this right was interfered with in any way.

Plaintiff cites In re Azek Building Products Marketing and Sales Practices Litigation, 82 F. Supp.

3d 608.  But in that case, the plaintiffs adequately alleged violation of an express warranty.

Plaintiff's breach of express warranty claim here has been dismissed.

Plaintiff also claims that there was an implied duty to ensure that all marketing materials

and other representations were not false and misleading.  He provides no allegations to support

implying this as a term of the contract.  He cites no case law supporting his theory that false or

misleading marketing materials constitute a breach of the covenant of good faith and fair dealing.

The covenant of good faith and fair dealing pertains to wrongful conduct which prevents

proper operation of a person's contractual rights.  No facts alleged indicate that LG's marketing

materials interfered with the proper operation of any contractual rights.  Plaintiff has not alleged

specific conduct by Defendant to deprive Plaintiff of his rights and benefits under the contract.  As

such, the Court dismisses Count II without prejudice.[5]

### G.  Unjust Enrichment (Count VI)

---

[5] Any repleaded claim for breach of the covenant of good faith and fair dealing should include all
facts supporting a finding that LG took the alleged actions in bad faith.

Plaintiff does not contest LG's motion to dismiss Plaintiff's unjust enrichment claim (Count VI).  Count VI is therefore dismissed with prejudice.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is **granted**.  An appropriate order accompanies this opinion.

Date: December 30, 2015                    */s Madeline Cox Arleo*
                                           **MADELINE COX ARLEO**
                                           **UNITED STATES DISTRICT JUDGE**