UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM EBERHART,<br><br>*Plaintiff*,<br><br>v.<br><br>LG ELECTRONICS USA, INC.,<br><br>*Defendant*. | Civil Action No. 15-1761<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of the Motion to Dismiss the First Amended Class Action Complaint ("Amended Complaint" or "FAC") filed by Defendant LG Electronics USA, Inc. ("LG"). D.E. 37. Plaintiff William Eberhart opposed the motion (D.E. 47) and LG filed a reply (D.E. 50). For the reasons stated below, the motion is **granted in part and denied in part**.

I.  **BACKGROUND**

   A.  **Factual Background**[1]

This is a proposed class action against a major television manufacturer for deceptively marketing its televisions' frame or refresh rates. The essence of Plaintiff's complaint is that LG deceives consumers as to the refresh rates for its televisions. Television consumers perceive motion on a television screen by observing a display of numerous still images in rapid succession.

---

[1] The factual background is taken from the Amended Complaint. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

1

FAC ¶ 2, D.E. 33. The number of unique still images that are displayed on a television screen during each second is referred to as the "refresh rate." *Id.* Because electricity in the United States runs at 60 hertz ("Hz"), televisions here generally have a 60 Hz refresh rate, meaning the television displays sixty unique images per second. *Id.* Through a technology called "motion interpolation," television manufacturers can increase the refresh rates by adding a unique image or images in between the original sixty images. *Id.* at ¶¶ 35-38. As a result, sixty new and unique images are interspersed with the original sixty images thereby creating an accurate refresh rate of 120 Hz. *Id.* at ¶ 38. However, LG allegedly used a less expensive and inferior technology which did not actually create or insert new and unique images between the original images. *Id.* at ¶ 39.

Plaintiff alleges that LG created two ratings systems, the Motion Clarity Index ("MCI") and "TruMotion," which purport to measure refresh rates for its LCD televisions with the aim of misleading consumers and commanding a higher price for its products.[2] *Id.* ¶¶ 3-4, 6. Although televisions only have a native refresh rate of 60 Hz, LG uses a technology called "backlight scanning" to make it appear that its televisions have a refresh rate of 120 Hz or higher. *Id.* ¶¶ 31-34. LG, however, intentionally fails to provide customers with access to the actual, native refresh rates of its televisions and utilizes ratings numbers of 120, 240, and 480, which are traditionally associated with hertz measurements, to confuse customers. *Id.* ¶¶ 6, 11, 33, 46. Plaintiff alleges that LG uses these ratings to "deceive customers into believing that their televisions can somehow increase the true refresh rates to levels above the standard 60 Hz." *Id.* ¶ 5. In actuality, customers pay an inflated price to purchase televisions "with an actual refresh rate of 60 Hz and a built-in, cheap industry trick." *Id.* ¶ 34.

---

[2] LG utilized the TruMotion ratings before 2014 then switched to the MCI ratings in 2014. FAC ¶¶ 3-4.

2

Plaintiff, William Eberhart, bought a 60 inch LG 60LB5200 television at a Walmart near his home in Toms River, New Jersey. *Id.* ¶¶ 17-18. Plaintiff sought out a television that had a minimum of 120 Hz and purchased the specific LG model because he believed that it "well exceed[ed] his 120 Hz floor." *Id.* ¶ 20. Plaintiff alleges that he relied upon LG's website and the television packaging, "which listed the television's refresh rate as MCI [480]."[3] *Id.* ¶¶ 19-21. Plaintiff's television has a native refresh rate of 60 Hz. *Id.* ¶ 22. Consequently, Plaintiff alleges that he was damaged because he paid a premium that is attributable to LG's misstatements about the television's refresh rate. *Id.* ¶ 23.

### B. Procedural History

Plaintiff filed his complaint on March 9, 2015, seeking to represent a class of purchasers of LG LCD televisions from March 1, 2011 to the present. Plaintiff's complaint contained the following counts: (1) violations of the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-2; (2) breach of the covenant of good faith and fair dealing; (3) common law fraud; (4) negligent misrepresentation; (5) breach of express warranty; and (6) unjust enrichment. D.E. 1. LG filed a motion seeking to dismiss all six counts of the Complaint on May 21, 2015. D.E. 13. On December 30, 2015, Judge Arleo granted Defendant's Motion to Dismiss in its entirety. Judge Arleo dismissed Plaintiff's unjust enrichment claim with prejudice and the remaining five counts were dismissed without prejudice, providing Plaintiff leave to file an amended complaint. *See* Dec. 30, 2015 Opinion ("Opinion") and Order, D.E. 29-30. Plaintiff filed his Amended Complaint on January 15, 2016, asserting causes of action under the CFA, common law fraud, and negligent

---

[3] When Plaintiff purchased his television, the LG website stated that "[o]ur Motion Clarity Index (MCI) rates how well LG LCD televisions display fast motion. This figure represents not only the benefits of our enhanced frame rates but also our detailed backlight scanning, advanced local dimming, and powerful video processing engine. A higher MCI is better, and this television has earned an impressive rating of 480." *Id.* ¶¶ 20, 40.

3

misrepresentation. D.E. 33. Defendant subsequently filed this motion to dismiss the Amended Complaint on February 26, 2016.[4] Defendant seeks for the Court to dismiss Plaintiff's Amended Complaint in its entirety. D.E. 37.

## II. **LEGAL STANDARD**

LG argues for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). A complaint that only pleads facts that are consistent with a defendant's liability, however, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 786.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, therefore, they are not entitled to an assumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Moreover, the Court must consider the complaint as a whole. *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 74 (3d Cir. 2011).

---

[4] The matter was transferred to the Honorable John Michael Vazquez, U.S.D.J., on February 25, 2016. D.E. 36.

For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard. Specifically, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A plaintiff must plead fraud with sufficient particularity such that he puts the defendant on notice of the "precise misconduct with which [he is] charged." *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557. "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

### III.   DISCUSSION

#### A.   New Jersey Consumer Fraud Act (Count I)

A plaintiff must establish three elements for a CFA claim to survive a motion to dismiss: (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss. *In re AZEK Building Prods., Inc. Mktg. & Sales Practice Litig.*, 82 F. Supp. 3d 608, 623 (D.N.J. 2015).

LG attacks the Amended Complaint with three arguments: (1) LG's advertising was literally true, (2) lack of causal connection, and (3) lack of ascertainable loss. As to the first point, Judge Arleo already concluded that Plaintiff "adequately alleged unlawful conduct under the CFA." Opinion at 7-8. As Judge Arleo correctly noted, a statement can still be misleading and

deceptive to an ordinary consumer even if it is not literally false. *Id.* at 7 (citing *Union Ink Co. v. AT&T Corp.*, 352 N.J. Super. 617, 644-45 (App. Div. 2002)).[5]

Concerning lack of causal connection, LG argues that Plaintiff's CFA claim fails because he sought a television with a minimum frame rate of 120 Hz and he actually purchased a television with a 120 Hz frame rate. In support, LG cites to an article referenced in note 3 of the Amended Complaint. Consequently, LG argues that Plaintiff suffered no harm from his purchase. Def's Br. at 9. LG's argument is unavailing. First, Plaintiff did not cite to the article to demonstrate the actual refresh rate of his television. Instead, the article was used to demonstrate that LG's representations were misleading and inaccurate. More importantly, Plaintiff pleads that he thought he was purchasing a television with a frame rate of more than 120 Hz "because the advertised MCI 480 rating . . . made him believe that the [t]elevision well exceeded his 120 Hz floor," but received a Television with a lower than expected frame rate. FAC ¶¶ 20, 22. Thus, while Plaintiff indicated that he desired a television with at least 120 Hz, he thought that the set he purchased from LG far exceeded this minimum. The situation is akin to a consumer who indicates that he had wanted an automobile with a mileage of at least twenty-five miles per gallon and then purchased a car he believed received forty-five miles per gallon. The manufacturer is not then immune if it demonstrates that the vehicle obtained twenty-five miles per gallon, for such argument fails to account for the difference in the premium paid for a more fuel efficient vehicle (i.e., one that obtained forty-five miles per gallon).

LG further argues that Plaintiff fails to establish ascertainable loss because the Amended Complaint does not allege prices for the promised television and the television he purchased. Def's

---

[5] The Court is also bound by Judge Arleo's prior conclusions pursuant to the law of the case doctrine, which prevents "relitigation of an issue after it has been actually decided in an earlier stage of the same litigation." *See Krys v. Aaron*, 106 F. Supp. 3d 472, 480 (D.N.J. 2015).

Br. at 11-12. Although not specifically defined, "the New Jersey Supreme Court has recognized that the [ascertainable] loss must be capable of calculation, and not just hypothetical or illusory." *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 374 (D.N.J. 2015). "The precise amount of loss need not be known; it need only be measureable." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 336 (D.N.J. 2014).

Judge Arleo dismissed Plaintiff's CFA claim in the original complaint because the single allegation as to Plaintiff's loss failed to provide a means by which to quantify the amount of his ascertainable loss.[6] Opinion at 8. Although Defendant correctly states that Plaintiff's Amended Complaint does not contain any price information (Def's Br. at 12), it omits the fact that Judge Arleo provided Plaintiff two options by which he could adequately plead ascertainable loss: price comparison *or* a method for quantifying loss. Judge Arleo ruled as follows:

> This allegation does not provide *a method to determine* the premium paid for a higher refresh rate on his television. Nor does he allege prices for comparable televisions without the deceptive advertising or with clearly expressed, accurate refresh rates. Plaintiff must allege *a means of quantifying his loss* in order to show ascertainable loss, and he has not done so.

Opinion at 8-9 (emphases added).

As instructed, Plaintiff attempts to provide a means by which to quantify his loss in the Amended Complaint. Plaintiff's attempt, however, falls short. Plaintiff states that "[d]iscovery, coupled with regression analysis, will isolate the relationship between refresh rate . . . and the market value of the television." FAC ¶ 51. Plaintiff further states that there is a quantifiable difference in price between "the price that consumers would pay . . . for [t]elevisions with actual heightened or greater refresh rates (*e.g.* 120, 240, 480 Hz) versus the price for a deceptively

---

[6] In the original complaint, Plaintiff only alleged that "refresh rates of modern televisions are an important differentiator among competing manufacturers and are, likewise, a key component of television pricing . . . ." Compl. ¶ 7, D.E. 1.

marketed [t]elevision." *Id.* ¶ 55. Plaintiff's proposed formula, however, does not provide a meaningful comparison. Plaintiff asks the Court to compare televisions with a heightened refresh rate, regardless of whether the refresh rate is real or deceptive. This analysis would likely result in a zero or nominal loss. The reason is that the price for both televisions – those that actually have legitimate refresh rates and those that have artificially high refresh rates – is presumably the same or very similar.

Instead, to meaningfully determine Plaintiff's ascertainable loss, Plaintiff should provide plausible facts that compare televisions that have an increased refresh rate with televisions that have the lower refresh rate Plaintiff actually received. *See, e.g.*, *Dzielak*, 26 F. Supp. 3d at 336 n.23 ("The amount of the price premium can be reasonably quantified by an appropriate market study of the prices for comparable washing machines sold with and without the Energy Star logo . . . ."); *Torres-Hernandez v. CVT PrePaid Solutions, Inc.*, No. 08-cv-1057-FLW, 2008 WL 5381227, at *7 n.3 (D.N.J. Dec. 17, 2008) (allegation that "an ascertainable economic loss that includes the purchase price of the pre-paid calling cards and the difference in price between the purchase price of the pre-paid cards and the fair market value for the actual minutes plaintiff received" would be sufficient to establish ascertainable loss); *Romano v. Galaxy Toyota*, 399 N.J. Super. 470, 484 (App. Div. 2008) (stating that the proper method to quantify ascertainable loss under the CFA is "the difference between the [item] she received and the [item] as represented at purchase"). Plaintiff complicates the issue and does not provide a practical means to quantify the ascertainable loss.[7] Consequently, Plaintiff's CFA claim is dismissed without prejudice.[8]

---

[7] The Court notes, that as previously set forth by Judge Arleo, Plaintiff could also provide a relevant price comparison.

[8] LG argues that Plaintiff should not be provided with an opportunity to re-plead because an amendment would be futile. Def's Br. at 18. Because Plaintiff could reasonably plead sufficient

8

### B.     Common Law Fraud (Count II)

"To establish common-law fraud, a plaintiff must prove: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)). Fraud must be pled with particularity pursuant to Rule 9(b). *See Frederico*, 507 F.3d at 200.

In dismissing Plaintiff's original fraud claim, Judge Arleo determined that Plaintiff (1) satisfied the particularity requirements pursuant to Rule 9(b), (2) adequately alleged that Defendant knew the alleged statement was false and intended to induce others to rely on its false statement, and (3) that Plaintiff was damaged. Opinion at 9-12. Judge Arleo, however, dismissed Plaintiff's fraud claim "for failure to adequately allege reliance on specific misrepresentations." *Id.* at 11. As previously discussed by Judge Arleo, in *Gray v. Bayer Corp.*, the court determined that "alleging the general exposure to, and reliance upon, some advertisements, is insufficient to survive heightened scrutiny." No. 08-4716, 2009 WL 1617930, at *3 (D.N.J. June 9, 2009) (dismissing fraud claim where plaintiff only pled that she "relied on Bayer's representations"). Following *Gray*, Judge Arleo concluded that Plaintiff's representation that he "reviewed advertisements and technical specifications created and disseminated by Defendant" was not enough. Opinion at 11.

---

facts to survive a motion to dismiss, the Court will dismiss this count without prejudice and permit Plaintiff leave to file a Second Amended Complaint if he so chooses. *See Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 603 (D.N.J. 2015) (providing plaintiff with opportunity to re-plead because "[t]he Third Circuit has liberally permitted pleading amendments to ensure that a particular claim will be decided on the merits rather than on technicalities").

9

Plaintiff's Amended Complaint remedies these shortcomings and pleads reasonable reliance with sufficient particularity. In the Amended Complaint, Plaintiff pleads that he expressly relied on statements on LG's website and television packaging stating that the television had an MCI rating of 480, providing a screenshot of the website page and a picture of the packaging that he allegedly reviewed before purchasing the television. FAC ¶¶ 20-21. Plaintiff further pleads that LG's statements about the MCI rating "made him believe that the [t]elevision well exceeded his 120 Hz floor." *Id.* ¶ 20. This is sufficient to survive a motion to dismiss. *See In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig.*, No. 12-3571, 2013 WL 6450701, at *5-6 (D.N.J. Dec. 9, 2013) (denying motion to dismiss fraud claims where plaintiffs adequately pled the misrepresentations that led them to make their purchases); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 105 (D.N.J. 2011) (concluding that plaintiffs adequately pled fraud claim where at least one Plaintiff pled that she purchased soup "after viewing misleading statements and representations on the labels of the cans and Campbell's website").

LG argues that Plaintiff's Amended Complaint does not adequately plead a claim for fraud because Plaintiff cannot demonstrate that his reliance was reasonable. LG claims that its materials state that the television had an MCI rating of 480 and did not mention refresh rates, frame rates, or hertz. Consequently, LG argues that it was unreasonable for Plaintiff to equate MCI ratings with refresh rates. Def's Br. at 13-14. The Court disagrees. LG is essentially rearguing that its use of TruMotion and MCI was not misleading, a position already rejected by Judge Arleo. Judge Arleo determined that Plaintiff adequately alleged an intent to deceive and knowledge of the falsity. Opinion at 11 ("These allegations, among others, sufficiently allege that Defendant knew

that its refresh rates were lower that it was implying them to be.").[9] Moreover, Plaintiff's Amended Complaint explicitly pleads that in 2014, LG "began measuring its LCD television refresh rates based on a 'Motion Clarity Index.'"[10] FAC ¶ 4. In addition, LG "fail[ed] to include or reference the true refresh rate of its televisions in [h]ertz within its marketing materials and packaging," and set the MCI ratings "at increments which mirror standard [h]ertz measurements for televisions." *Id.* ¶ 6. Last, although MCI is an "index," LG's explanation of what MCI measures explicitly mentions "enhanced frame rates." FAC ¶ 20. This is more than enough at the motion to dismiss stage to plead that Plaintiff's reliance was reasonable. *See, e.g.*, *Smajlaj*, 782 F. Supp. 2d at 105.

LG also argues that it was unreasonable for Plaintiff to rely on LG's website and packaging "given the wealth of publically available information that explained that most major television manufacturers (including LGE) implemented ratings systems that incorporate different elements and that are expressly not 'refresh rates.'" Def's Br. at 14. In support of its position, LG points to the articles referred to in the Amended Complaint. *Id.* Although Plaintiff's Amended Complaint incorporates a few articles by reference, Plaintiff cites to the articles to demonstrate that LG created a misleading marketing practice. FAC ¶¶ 46-49. Plaintiff does not allege that he relied on any articles, let alone read them, before purchasing his television. Moreover, Plaintiff had no

---

[9] LG's argument that Plaintiff's reliance was not reasonable was also implicitly rejected by Judge Arleo when she concluded that Plaintiff adequately alleged unlawful conduct under the CFA. Opinion at 7-8 ("According to the Complaint, Defendant created rating systems for their television[s]' clarity of motion, intentionally pegged at intervals associated with hertz to mislead consumers into believing LG televisions had higher refresh rates. Plaintiff has alleged sufficient facts to show that Defendant's MCI and TruMotion systems *could mislead the average reasonable consumer*." (emphasis added)). Judge Arleo determined that a reasonable consumer could be misled by LG's statements, and Plaintiff clarified in the Amended Complaint that he did in fact rely on these misleading representations.

[10] The Amended Complaint pleads similar allegations for TruMotion, namely that "TruMotion increases the standard 60 Hz refresh rate . . . which drastically reduces blur and yields crisper details . . . . LG TruMotion 120 Hz, 240 Hz or 480 Hz is available on select-model LCD TVs." FAC ¶ 3.

11

obligation to conduct an inquiry into whether LG's statements were accurate. *Walid v. Yolanda for Irene Couture, Inc.*, 425 N.J. Super. 171, 184 (App. Div. 2012) (concluding that plaintiffs' reliance was justifiable under the circumstances and facts did not support the conclusion that they conducted or were required to conduct an independent inquiry). Given that the Court must view the allegations in a light most favorable to Plaintiff, it rejects LG's argument that the inclusion of these articles negates Plaintiff's reasonable reliance. Whether Plaintiff was aware of any articles regarding LG's misleading practice and what articles, if any, that he read is best left for discovery.

As a result, LG's motion to dismiss as to the fraud claim is denied.

### C. Negligent Misrepresentation (Count III)

To establish a claim for negligent misrepresentation, a plaintiff must establish that (1) a false statement, (2) was negligently made, (3) plaintiff justifiably relied on that statement, and (4) suffered economic loss or injury because of the reliance. *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 312 (D.N.J. 2012). The Court determines that Plaintiff's Amended Complaint sets forth a claim for negligent misrepresentations based on affirmative misrepresentations. LG does not appear to argue otherwise.

In the first motion to dismiss, Judge Arleo concluded that Plaintiff "identif[ied] at least two allegedly false statements." Opinion at 12 (citing Compl. ¶¶ 3, 37-38). Plaintiff's Amended Complaint contains the same factual allegations. FAC ¶¶ 3, 40-41. Thus Plaintiff adequately pleads the existence of false statements. Plaintiff's Amended Complaint also pleads that the statements were negligently made (FAC ¶ 87), and that Plaintiff justifiably relied on the statements (*see supra* III.B) and suffered an economic injury (FAC ¶ 23).

LG, however, argues that Plaintiff does not state a negligent misrepresentation claim to the extent Plaintiff alleges that he relied on LG's omissions. Def's Br. at 15-16. The Court agrees. A

negligent misrepresentation claim may be based on an omission only if the breaching party owes an independent duty to disclose. *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146 (DMC)(JAD), 2010 WL 2925913, at *11 (July 21, 2010). Under New Jersey law, a duty to disclose arises when (1) a fiduciary relationship exists between the parties, (2) the transaction is intrinsically fiduciary in nature in that it calls for good faith and full disclosure, or (3) one party expressly reposes a special trust or confidence in the other. *Id.*

Plaintiff pleads no facts to support his conclusory statement that "Defendant owed a duty to Plaintiff and Class to provide them with accurate information regarding the true refresh rates of the Television." FAC ¶ 85. There is no evidence to suggest that the parties were in a fiduciary relationship or that the transaction was fiduciary in nature. Instead, it is clear that the parties were engaged in an arm's length transaction. *See, e.g., Alin v. Am. Honda Motor Co., Inc.*, No. 08-4825 (KSH), 2010 WL 1372308, at *14 (D.N.J. Mar. 31, 2010) (dismissing negligent misrepresentation claim based on an omission where "the facts alleged in the complaint indicate that the parties entered into an arm's length contract" regarding a car lease). Plaintiff's argument that he placed special trust in LG is also unavailing. Plf's Br. at 22-23, D.E. 47. This is because the third exception regarding a special trust or confidence is only applicable when "the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling." *City of Milville v. Rock*, 683 F. Supp. 2d 319, 332 (D.N.J. 2010) (quoting *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 553 (App. Div. 1997) (dismissing fraud claims premised on an omission because there was no duty to disclose). This matter clearly does not fall within this exception. Consequently, because LG had no duty to disclose facts to Plaintiff, his negligent misrepresentation claim, to the extent it is based on an omission, is dismissed with prejudice.

### D.      TruMotion

LG argues that Plaintiff's claims as to TruMotion should be dismissed because TruMotion and MCI are distinct, and Plaintiff did not rely on the TruMotion rating scale when he purchased his television. Consequently, Plaintiff "cannot plead legally sufficient claims based on statements regarding TruMotion." Def's Reply Br. at 14; *see also* Def's Br. at 16-17. Judge Arleo concluded that that there was a common basis between allegations regarding the TruMotion and MCI ratings, the products were the same, and the Defendant was the same. As a result, Judge Arleo deferred final adjudication of whether Plaintiff has standing to bring class claims for TruMotion televisions until class certification. Opinion at 5-6 (citing *In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig*, 2013 WL 6450701, at *4). The Court sees no reason to disrupt Judge Arleo's conclusion. As previously determined, the issue of whether Plaintiff can assert class claims on behalf of TruMotion consumers can be addressed at the class certification stage.

### IV.     CONCLUSION

For the foregoing reasons, LG's Motion to Dismiss the First Amended Class Action Complaint is **granted in part and denied in part**. An appropriate order accompanies this opinion.

Dated: May 24, 2016

_____
John Michael Vazquez, U.S.D.J.